IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------------------    :
SHANE ELERSIC                                          : CASE NO.  1:03 CV 1338
                                                       :
                           Plaintiff                   :
                                                       : MEMORANDUM OF OPINION AND
             -vs-                                      : ORDER GRANTING IN PART AND
                                                       : DENYING IN PART LAKE COUNTY
                                                       : DEFENDANTS' MOTION FOR
LAKE COUNTY, et al.                                    : JUDGMENT ON THE PLEADINGS
                                                       :
                           Defendants                  :
---------------------------------------------------    :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 9 July 2003, *pro se* plaintiff Shane Elersic filed an eleven-count complaint against Lake County, Lake County Sheriff Department, Lonnie Sparkman, Eugene Lucci, Kevin Coleman, Charles Ashman, Richard Collins, Mark Bartolotta, Geauga County, Geauga County Sheriff Department, Chester McNabb, and News Herald.  (Docket #1). The "Lake County Defendants" include Lake County, Lake County Sheriff Department, Lake County Detectives (Sparkman, Lucci, Coleman, and Ashman), and Lake County Prosecutors (Bartolotta and Collins).  In his complaint, Mr. Elersic alleges, among other things, an illegal seizure claim (count two) against defendants Lake County, Lake County Sheriff Department, and Lieutenant Lonnie Sparkman; speedy trial and double jeopardy claims (counts four and six) against Lake County and Prosecutor Mark Bartolotta;[1] a false

---

[1] Although the Lake County Defendants, in their motion, suggest that Mr. Elersic's speedy trial and double jeopardy claims were filed against defendant Richard Collins as well, this Court, after a careful reading of the complaint, finds that these claims are asserted against Lake County and Mr. Bartolotta only.

imprisonment claim (count seven) against Lake County;[2] a malicious prosecution claim (count eight) against Chester McNabb, the Lake County Detectives, and the Lake County Prosecutors; civil conspiracy and intentional infliction of emotional distress claims (counts nine and ten) against the Lake County Detectives and Prosecutors.[3]

Currently before this Court is the Lake County Defendants' motion, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings.[4] (Docket #30). Plaintiff has not filed a brief in opposition. For the reasons set forth below, the Lake County Defendants' motion is granted as to Lake County and Lake County Sheriff Department on count two, granted as to all defendants on counts four, six, seven, and eight, and is denied as to count nine.

## I.  BACKGROUND

This lawsuit arose out of several criminal investigations, prosecutions, and convictions of Mr. Elersic in both Lake and Geauga Counties.

### A. First Lake County Case

On 17 September 1999, a Lake County Grand Jury indicted Mr. Elersic on nine counts stemming from crimes committed at the Concord Nursery, Great Lakes Auto

---

[2] Although the Lake County Defendants, in their motion, suggest that Mr. Elersic's false imprisonment claim was filed against defendants Mark Bartolotta and Richard Collins as well, this Court finds that this claim is asserted against Lake County only.

[3] Mr. Elersic does not specify which defendants are being sued for intentional infliction of emotional distress; however, he bases his claim on allegations of false imprisonment related to the Lake County cases and refers to "law enforcement" and the "prosecutor."  Accordingly, a liberal construction of Mr. Elersic's intentional infliction of emotional distress claim (count ten) is that it is asserted against the Lake County Detectives and Prosecutors.

[4] While the Lake County Defendants seek the dismissal of Mr. Elersic's complaint in its entirety, they do not advance any arguments with respect to Mr. Elersic's intentional infliction of emotional distress claim (count ten).

2

Recycling, and the Red Hawke Grille. State v. Elersic, 2001 WL 1497192, at *1 (Ohio Ct. App. Nov. 21, 2001) (hereinafter referred to as "Lake County decision") (Compl. at I.) After a jury trial, Mr. Elersic was found guilty of six counts and not guilty on three counts. (Lake County Decision at *2; Compl. at I.) On 21 November 2001, the Ohio Court of Appeals reversed Mr. Elersic's conviction because of five errors committed by the trial court in: 1) failing to suppress evidence seized during the search of Mr. Elersic's Mazda MX6; 2) permitting the state to amend its indictment on the morning of trial; 3) refusing to give Mr. Elersic the opportunity to fully explain his concerns about his trial counsel; 4) admitting testimony regarding a break-in at the Hillwick residence; and 5) empaneling an alternate juror and improperly instructing the jury after it had reached verdicts on seven of the nine counts. (Lake County Decision, at *3-10 and *13-14). On remand, the trial court dismissed all counts except the charge of receiving stolen property with a firearm specification. State v. Elersic, Case No. 2002-L-172, at ¶ 4 (Ohio App. Ct. Sept. 30, 2004) (hereinafter cited as "Lake County Decision II"). A jury found Mr. Elersic not guilty of this charge on 9 July 2002. (Lake County Decision II, at ¶ 7).

**B.   Geauga County Case**

On 11 February 2000, Mr. Elersic was charged in a six-count indictment in Geauga County with various crimes including a break-in at St. Denis Golf Course and the subsequent police chase as well as other break-ins in Geauga County. State v. Elersic, 2003 WL 23097098, at *1 (Ohio Ct. App. Dec. 31, 2003) (hereinafter referred to as "Geauga County Decision") (Compl. at I.) Although the counts involving the other Geauga County break-ins were subsequently dismissed, the three charges against Mr. Elersic

3

related to the St. Denis incident remained.  (Geauga County Decision, at *1).  In June 2000, a second indictment was issued charging Mr. Elersic with one count of breaking and entering, also involving the St. Denis incident.  (Geauga County Decision, at *1).  These charges were consolidated for trial and a jury found him guilty of all four counts, breaking and entering, theft, possession of criminal tools, and failure to comply with an order of a police officer.  (Geauga County Decision, at *1; Compl. at I.).  Mr. Elersic was sentenced to ten month terms each for his convictions of breaking and entering, theft, and possession of criminal tools and a fourteen month term for his conviction for failure to comply with order or signal of a police officer, with the terms on all four counts to be served concurrently to each other.  (Geauga County Decision, at *1).  Mr. Elersic's conviction in Geauga County was upheld on appeal.  (Geauga County Decision, at *9).[5]

## C.  Second Lake County Case

On 29 March 2002, Mr. Elersic was charged in a second Lake County indictment on one count of burglary with a firearm specification and one count of grand theft with a firearm specification.  (Lake County Decision II, at ¶ 7; Compl. at I. and VII.)  On 6 August 2002, Mr. Elersic filed a motion to dismiss the indictment on the grounds of double jeopardy, res judicata, collateral estoppel, prosecutorial vindictiveness, and speedy trial.  (Lake County Decision II, at ¶ 8).  The trial court granted in part and denied in part Mr. Elersic's motion, dismissing the grand theft count.  (Lake County Decision II, at ¶ 8).  On 11 October 2002, Mr. Elersic was found guilty by a jury in connection with the 25 April 1999

---

[5] On 26 May 2004, the Ohio Supreme Court declined to accept review of Mr. Elersic's Geauga County conviction.  State v. Elersic, 102 Ohio St.3d 1459 (2004).

burglary of Douglas Tenny's residence.  (Lake County Decision II, at ¶¶ 10-11).  Pursuant to a 19 November 2002 judgement entry, the trial court sentenced Mr. Elersic to a four year term in prison for the burglary conviction and to an additional one year term for the firearm specification, which was to be served prior to and consecutive to his four year term.  (Lake County Decision II, at ¶ 19).

On appeal, Mr. Elersic raised eleven assignments of error including that his speedy trial, double jeopardy, and due process rights were violated.  (Lake County Decision II, at ¶¶ 20-23).  The Ohio Court of Appeals upheld Mr. Elersic's conviction, finding that his right to a speedy trial was not violated, that his constitutional right not to be put twice in jeopardy for the same offense was not violated, and that his due process claim of prosecutorial vindictiveness lacked merit.  (Lake County Decision II, at ¶¶ 37, 43, 54, and 105).[6]

## II.  LEGAL STANDARD

The Court considers a motion for judgment on the pleadings under the same standard as a motion to dismiss.  Ziegler v. IBP Hog Market, 249 F.3d 509, 511-12 (6th Cir. 2001).  When deciding a motion for judgment on the pleadings, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief."  Id.

---

[6] While his direct appeal was pending, Mr. Elersic also filed, in May 2003, a writ of habeas corpus in state court claiming that he had been denied his right to a speedy trial and that his 2002 conviction violated his constitutional protection against double jeopardy.  Elersic v. Wilson, 101 Ohio St.3d 417 (2004).  On 14 April 2004, the Supreme Court affirmed the judgment of the court of appeals dismissing Mr. Elersic's petition, finding that his double jeopardy and speedy trial claims were not cognizable in habeas corpus.  Elersic v. Wilson, 101 Ohio St.3d 417 (2004).

The purpose of the complaint is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Accordingly, the Court's task, at this stage, is necessarily a limited one, as "the issue is not whether a [party] will ultimately prevail, but whether the [party] is entitled to offer evidence to support the claims." Miller v. Curie, 50 F.3d 373, 377 (6th Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). However, while "a complaint need not set down in detail all the particularities of a plaintiff's claim [it] must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 726 (6th Cir. 1996).

### III. ANALYSIS

With respect to the Lake County Defendants, Mr. Elersic claims that they violated his civil rights and asserts, pursuant to 42 U.S.C. § 1983, five claims against them: 1) illegal seizure (count two); 2) speedy trial (count four); 3) double jeopardy (count six); 4) false imprisonment (count seven); 5) malicious prosecution (count eight). Mr. Elersic also asserts two state law claims against the Lake County Defendants: 1) civil conspiracy (count nine); and 2) intentional infliction of emotional distress claims (count ten).

The Lake County Defendants argue that all claims against the Lake County Sheriff Department must be dismissed because it is not a entity capable of being sued and that Mr. Elersic's civil conspiracy claim fails under the "intra-corporate conspiracy" doctrine. They also seek the dismissal of Mr. Elersic's Section 1983 claims on several grounds:

- Plaintiff's conviction, which forms the basis of his Section 1983 lawsuit, has

6

> not been invalidated;

- No *respondeat superior* liability for Lake County;

- Prosecutorial immunity for the Lake County Prosecutors; and,

- Mr. Elersic fails to state a claim for malicious prosecution against the Lake County Detectives, and/or his claim fails due to the operation of qualified immunity.

Each argument will be addressed in turn.

### A. Legal Status of a Sheriff Department

Mr. Elersic names the Lake County Sheriff Department, along with Lake County and Detective Sparkman, in his illegal seizure claim. The Lake County Sheriff Department is merely a sub-unit of Lake County and is not capable of being sued as a separate entity. Papp v. Snyder, 81 F. Supp. 2d 852, 857 n.4 (N.D. Ohio 1999); Williams v. Dayton Police Department, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987). Accordingly, the Lake County Sheriff Department will be dismissed as a party to this action. Although the Geauga County Defendants did not raise this issue in their motion for judgment on the pleadings (Docket #27), this conclusion applies with equal force to the Geauga County Sheriff Department which will be dismissed as well.

### B. Civil Conspiracy Claim

In count nine, Mr. Elersic alleges that the Lake County Detectives and the Lake County Prosecutors engaged in a malicious civil conspiracy to withhold evidence or fabricate testimony related to his Lake County cases. Implicitly assuming that Mr. Elersic's conspiracy claim is based on federal law, the Lake County Defendants argue that his claim is barred by the "intra-corporate conspiracy" doctrine.

7

As an initial matter, the Court agrees with the Lake County Defendants that Mr. Elersic's civil conspiracy claim would fail to the extent that it is a federal conspiracy claim based on 42 U.S.C. § 1985.[7] As noted by the defendants, the Sixth Circuit has applied the intra-corporate conspiracy doctrine to conspiracy claims asserted pursuant to 42 U.S.C. § 1985. Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 509 (6th Cir. 1991); *see also* Doherty v. American Motors Corp., 728 F.2d 334, 339-40 (6th Cir. 1984). The "intra-corporate conspiracy" doctrine provides that a conspiracy claim will generally not lie when all defendants are members of the same collective entity because they do not constitute separate people as is required to form a conspiracy. Hull, 926 F.2d at 509. As the Lake County Detectives and Lake County Prosecutors are all agents of Lake County, plaintiff's civil conspiracy claim would fail to the extent that he was raising it pursuant to federal law.[8]

However, because Mr. Elersic does not refer to Section 1985 anywhere in his complaint or to federal law in his civil conspiracy claim and because Mr. Elersic's civil conspiracy claim immediately proceeds two other state law claims, this Court construes

---

[7] The second part of Section 1985(2) "applies to conspiracies to obstruct the course of justice in state courts." Kush v. Rutledge, 460 U.S. 719, 725 (1983).

[8] Although the intra-corporate conspiracy doctrine is inapplicable under certain circumstances, such as when employees act outside the scope of their employment, Johnson v. Hills & Dales General Hosp., 40 F.3d 837, 841 (6th Cir. 1994), Mr. Elersic's complaint, liberally construed, does not suggest the presence of such circumstances. Moreover, even if the intra-corporate conspiracy doctrine did not apply, a federal conspiracy claim would fail for another reason. Under the portion of Section 1985(2) which proscribes conspiracies to obstruct justice in state court, a plaintiff must allege that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." Kush, 460 U.S. at 726; *see also* Bragg v. Madison, 20 Fed. Appx. 278, 285 (6th Cir. Aug. 31, 2001); Miller v. Dowagiac Police Dept., 1997 WL 640127, *5 (6th Cir. Oct. 14, 1997). As plaintiff Shane Elersic does not allege that he is a member of a protected class for Section 1985(2) purposes, any attempt to bring a civil rights conspiracy claim under that section would be unavailing.

8

count nine as a civil conspiracy claim based on state law. As such, this Court must look to Ohio law in analyzing Mr. Elersic's civil conspiracy claim, and defendants' reliance on Hull is misplaced as that case involved the application of federal civil rights' law. Since defendants did not argue that Ohio courts have applied the intra-corporate conspiracy doctrine to civil conspiracies based on state law, this Court declines to address this issue on its own initiative.

**C.    Mr. Elersic's Section 1983 Claims**

To sustain a Section 1983 claim, Mr. Elersic must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state law. Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 155 (1978); Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995).[9]  Defendants argue that all of Mr. Elersic's Section 1983 claims fail as a matter of law.

    1.    Impact of Plaintiff's Conviction on His Section 1983 Claims

The Lake County Defendants contend that all five of Mr. Elersic's Section 1983 claims fail as a matter of law because a judgment in his favor on any of those claims would necessarily challenge the lawfulness of a conviction which has not been invalidated.

---

[9] Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

9

a.     *Heck* Doctrine

In Preiser v. Rodriguez, the United States Supreme Court held that suits challenging the fact or duration of a state prisoner's confinement or seeking immediate or speedier release must be brought under the habeas corpus statute and not Section 1983. 411 U.S. 475, 489-90 (1973).  The United States Supreme Court revisited the intersection of habeas actions and Section 1983 claims in Heck v. Humphrey, concluding that a state prisoner seeking monetary relief rather than immediate or speedier release may raise a cognizable claim under Section 1983 depending on whether his or her claim necessarily challenges the lawfulness of the conviction itself and whether the conviction has been invalidated.  512 U.S. 477, 484-87 (1994).  Accordingly, this Court is presented with the threshold question of whether a judgment in Mr. Elersic's favor would demonstrate the invalidity of an outstanding criminal conviction.

If a judgment in Mr. Elersic's favor on his Section 1983 claims would not demonstrate the invalidity of any outstanding criminal judgment against him, then the action may proceed absent another bar to the lawsuit.  Id. at 487.  If, on the other hand, a judgment rendered in his favor would necessarily imply the invalidity of his conviction or sentence, Mr. Elersic's Section 1983 claims must be dismissed unless he can demonstrate that the conviction or sentence has already been invalidated by:

1)    Reversal on direct appeal;

2)    Expungement by executive order;

3)    Being declared invalid by a state tribunal authorized to make such determination; or,

10

> 4) Being called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. 2254.

Id. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487. Where a plaintiff fails to allege an injury distinct from his conviction with respect to his Section 1983 claims, these claims necessarily attack the lawfulness of the conviction. Lanier v. Bryant, 332 F.3d 999, 1005-1006 (6th Cir. 2003) (explaining that *Heck*'s holding applies to both Section 1983 and *Bivens* claims and stating this rule in the context of a *Bivens* claim).

In their motion for judgment on the pleadings, the Lake County Defendants contend that Mr. Elersic's Section 1983 claims necessarily implicate the validity of his Lake County conviction and must be dismissed because that conviction has not been invalidated. Given that Mr. Elersic's complaint implicates several different convictions, the Court, in the context of examining each claim, must engage in the following three-step process: 1) Identify which conviction(s) is/are pertinent to the particular claim; 2) Determine whether Mr. Elersic's success on that claim would necessarily invalidate the pertinent conviction(s); and, 3) If the claim would invalidate the conviction, determine whether Mr. Elersic has demonstrated that the pertinent conviction(s) has/have been reversed, expunged, or otherwise rendered invalid.

### b. *Illegal Seizure (Count Two)*

In his illegal seizure claim (count two), Mr. Elersic alleges that Lake County and Officer Sparkman violated his Fourth Amendment rights by "seizing his 1993 Mazda MX-6 without a warrant [or] probable cause." (Compl. at III). Mr. Elersic's illegal seizure claim

11

relates to his first Lake County conviction, which was reversed on direct appeal.  On 29 June 1999, prior to his indictment in the first Lake County case, Lake County deputies seized Mr. Elersic's Mazda, without a warrant, from the privately owned parking lot of an apartment complex.  On appeal, the Ohio Court of Appeals specifically held that the seizure of the Mazda was illegal and that all evidence obtained as a result of the search should be suppressed.  (Lake County decision at *3-5).[10]  Because Mr. Elersic's illegal seizure claim relates to a conviction that was reversed on direct appeal, Heck does not operate to bar that claim.

          c.    *False Imprisonment (Count Seven) and Malicious Prosecution (Count Eight)*

Like his illegal seizure claim, Mr. Elersic's false imprisonment and malicious prosecution claims are based on his first Lake County conviction which was subsequently reversed on appeal.  Specifically, Mr. Elersic alleges that Lake County falsely imprisoned him for 1,197 days from his 20 July 1999 arrest until his release on $15,000 bond after the Ohio Court of Appeals reversed and remanded his conviction.  Moreover, he contends that this initial conviction as well as his continued prosecution following the remand was the product of malicious prosecution on the part of the Lake County Detectives and Lake County Prosecutors.  As these two claims are connected to a conviction which was reversed on appeal and/or to a prosecution that did not result in a guilty verdict, Heck is inapplicable.

---

[10] In articulating its reasoning, the Ohio Court of Appeals explained that it was "particularly concerned" that the Mazda was seized "without a warrant, in spite of the fact that the vehicle itself had not been tied to any criminal activity" and that no exigent circumstances were present to justify its seizure. (Lake County Decision at *4-5).

12

    d.  *Speedy Trial (Count Four) and Double Jeopardy (Count Six)*

Mr. Elersic asserts his speedy trial and double jeopardy claims (counts four and six) against defendant Lake County only, and these claims are unequivocally based on the second Lake County conviction. Because speedy trial and double jeopardy claims necessarily implicate the validity of the underlying conviction, they are not cognizable unless the underlying conviction has been set aside. See e.g. Cochran v. Municipal Court of City of Barberton, Summit County, 91 Fed. Appx. 365, 367 (6th Cir. Dec. 11, 2003) (concluding that Section 1983 claims for speedy trial violations can not be brought under Section 1983 until the underlying conviction has been set aside). Since Mr. Elersic's second Lake County conviction remains valid, his Section 1983 claims against Lake County, for violating his constitutional right to a speedy trial and to avoid twice being placed in jeopardy for the same offense, fail as a matter of law.

  2. Section 1983 Claims Against Lake County

The Lake County Defendants assert that all claims against Lake County must be dismissed for failure to state a claim because Mr. Elersic has not alleged a custom or policy as is necessary to support local government liability under Section 1983. Having concluded that Mr. Elersic's speedy trial and double jeopardy claims should be dismissed for other reasons, Mr. Elersic's illegal seizure and false imprisonment claims are the only Section 1983 claims remaining against Lake County.

As noted by the defendants, Section 1983 liability cannot be premised on a theory of *respondeat superior* or vicarious liability. Monell v. New York City Dept. of Social

Services, 436 U.S. 658, 690-91 and 694-95 (1978). Rather, a local governmental entity can only be found liable under Section 1983 if the entity itself causes the constitutional violation at issue. Id. It is only when the "execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); *see also* McMillian v. Monroe County, 520 U.S. 781, 788 (1997); Doe v. Claiborne County, Tenn. by and through Claiborne County Bd. of Educ., 103 F.3d 495, 507-508 (6th Cir. 1996) (explaining that there must be a direct causal link between the policy or custom and the constitutional injury). Governmental entities "do not 'cause' constitutional violations solely by having employed a constitutional tortfeasor." Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993).

Even a liberal construction of Mr. Elersic's complaint does not reveal an allegation of a Lake County policy or custom which caused his constitutional injuries. By limiting his allegations to the conduct of Lake County employees, Mr. Elersic has failed to state a Section 1983 claim against Lake County itself. Accordingly, Mr. Elersic's remaining Section 1983 claims asserted against Lake County – illegal seizure and false imprisonment – will be dismissed.

3. Section 1983 Claims Against the Lake County Prosecutors

The Lake County Defendants contend that Lake County Prosecutors Collins and Bartolotta are absolutely immune from liability for the alleged Section 1983 claims in this case. Given this Court's construction of Mr. Elersic's complaint[11] and its finding that the

---

[11] This Court construed Mr. Elersic's false imprisonment claim as alleged against Lake County only and his civil conspiracy claim as one predicated on state law.

speedy trial and double jeopardy claims should be dismissed on other grounds, the only Section 1983 claim remaining against the Lake County Prosecutors is the one for malicious prosecution.  With respect to the Lake County Prosecutors, the malicious prosecution allegations relate to:

- Prosecutor Collins' decision to amend the indictment on 2 February 2000;

- Prosecutors Collins and Bartolotta's alleged knowing solicitation of false testimony from Mike Fazzolare on two separate occasions; and,

- Prosecutor Collins and Bartolotta's alleged failure to disclose the identity of the confidential informant and a favorable witness.

(Compl. at IX).

Prosecutors enjoy absolute immunity from Section 1983 liability for acts "undertaken in preparation for the initiation of judicial proceedings or a trial, and which occur in the course of his role as an advocate for the State."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); *see also* Imbler v. Pachtman, 424 U.S. 409 (1976).  Such "absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously."  Lomaz v. Hennosy, 151 F.3d 493, 498 n.7 (6th Cir. 1998)   However, a prosecutor is only entitled to qualified immunity for "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings."  Buckley, 509 U.S. at 273 (*citing* Burns v. Reed, 500 U.S. 478, 494-96 (1991)); *see also* Lomaz, 151 F.3d at 498.  The critical inquiry is "how closely related is the prosecutor's challenged activity to his *role as an advocate intimately associated with the judicial phase of the criminal process*."  Spurlock v.

15

Thompson, 330 F.3d 791, 798 (6th Cir. 2003).

In this case, all of Mr. Elersic's malicious prosecution allegations involve conduct associated with the Lake County Prosecutors' advocacy role and therefore they maintain absolute immunity from Mr. Elersic's Section 1983 malicious prosecution claim.  *See e.g.* Imbler, 424 U.S. at 431 (holding that a prosecutor is cloaked with absolute immunity "in initiating a prosecution and in presenting the State's case"); Spurlock v. Thompson, 330 F.3d at 797 (explaining that "even the knowing presentation of false testimony at trial is protected by absolute immunity"); Jones v. Shankland, 800 F.2d 77, 80 (6th Cir. 1986) (concluding that the "use of perjured testimony and the non-disclosure of exculpatory information are certainly entitled to absolute immunity"); Grant v. Hollenbach, 870 F.2d 1135, 1138 (6th Cir. 1989) (explaining that the decision to prosecute is afforded absolute immunity).  In other words, the Lake County Prosecutors are absolutely immune from liability on Mr. Elersic's Section 1983 malicious prosecution claim regardless of whether their charging decisions were malicious, whether they knowingly presented false evidence, and whether they withheld exculpatory evidence.  Accordingly, the Lake County Prosecutors are entitled to dismissal of that claim.

    4.    <u>Section 1983 Malicious Prosecution Claim Against the Lake County Detectives</u>

In his malicious prosecution claim against the Lake County Detectives, Mr. Elersic alleges that they ignored favorable evidence, withheld exculpatory evidence, and coerced

16

Mike Fazzolare to make false statements against him.[12] Notwithstanding these allegations, Mr. Elersic does not assert that the Lake County Detectives participated in the decision to prosecute him.[13] A defendant may not be held liable for malicious prosecution unless he or she made the decision to prosecute, Skousen v. Brighton High School, 305 F.3d 520, 529 (6th Cir. 2002), or, at a minimum, "conspired with, influenced, or . . . participated in" that decision, McKinley v. City of Mansfield, 404 F.3d 418, 444 (6th Cir. 2005). Because Mr. Elersic's complaint is devoid of allegations that the Lake County Detectives made or otherwise participated in the decision to prosecute, his malicious prosecution claim against them fails as a matter of law.[14]

## IV. CONCLUSION

For the reasons set forth above, the Lake County Defendants' motion for judgment on the pleadings is granted in part and denied in part. Specifically, this Court dismisses counts four (speedy trial), six (double jeopardy), seven (false imprisonment), and eight (malicious prosecution) in their entirety and dismisses defendants Lake County, Lake County Sheriff Department, and Geauga County Sheriff Department as parties to this action.

---

[12] He also asserts that Lonnie Sparkman ordered his Mazda seized without probable cause.

[13] In his civil conspiracy claim, Mr. Elersic does allege the existence of a conspiracy among the Lake County Detectives and Lake County Prosecutors to "withhold evidence" and "fabricate testimony." However, this alleged conspiracy does not extend to the decision to prosecute.

[14] Because this Court finds the absence of any allegations regarding the Lake County Detectives involvement in the prosecution decision to be dispositive, it does not address the defendants alternative arguments regarding probable cause and qualified immunity.

17

Considering both the present ruling and this Court's prior ruling on the Geauga County Defendants motion for judgment on the pleadings (Docket #31), this case will proceed on the following causes of action:

- Section 1983 false arrest claim (count one) against Geauga County and Chester McNabb;

- Section 1983 illegal seizure claim (count two) against Lonnie Sparkman;

- Civil conspiracy claim (count nine), based on Ohio law, against Lonnie Sparkman, Eugene Lucci, Kevin Coleman, Charles Ashman, Richard Collins, and Mark Bartolotta.

- Intentional infliction of emotional distress claim (count ten), based on Ohio law, against Lonnie Sparkman, Eugene Lucci, Kevin Coleman, Charles Ashman, Richard Collins, and Mark Bartolotta; and

- A libel claim (count eleven), based on Ohio law, against News Herald.

IT IS SO ORDERED.

    /s/ Lesley Wells  
UNITED STATES DISTRICT JUDGE

Dated: 7 June 2005