IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ------------------------------------------------- : | |
| SHANE R. ELERSIC, : | CASE NO. 1:03 CV 1338 |
| Plaintiff, : | |
| : | ORDER & OPINION GRANTING |
| -vs- : | GEAUGA COUNTY DEFENDANTS' |
| : | MOTION FOR SUMMARY JUDGMENT, |
| LAKE COUNTY, et al. : | GRANTING IN PART LAKE COUNTY |
| Defendants. : | DEFENDANTS' MOTION FOR |
| : | SUMMARY JUDGMENT, AND |
| : | REMANDING REMAINING STATE |
| ------------------------------------------------- : | CLAIMS |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 9 July 2003, pro se plaintiff Shane R. Elersic filed an eleven-count complaint against Lake County; Lake County Sheriff Department; Lake County police officers Lonnie Sparkman, Eugene Lucci, Kevin Coleman, and Charles Ashman; Lake County prosecutors Richard Collins and Mark Bartolotta; Geauga County; Geauga County Sheriff Department; Geauga County detective Chester McNabb; and the News Herald. (Docket No. 1).

In an order dated 7 June 2005, this Court dismissed all but one claim asserted against Geauga County, Geauga County Sheriff Department ("collectively Geauga County"), and Cheston McNabb. (Docket No. 31). The Court further dismissed additional claims asserted against Lake County, Lake County Sheriff Department, and the named Lake County detectives and prosecutors. (Docket No. 50). The remaining claims in this case include a § 1983 claim against Detective McNabb and Geauga County for false arrest, a § 1983 claim against Captain Sparkman for illegal seizure, and state law claims of civil conspiracy and intentional infliction of emotional distress against

the Lake county detectives and prosecutors.  (Docket No. 50 at 18).

This case is now before the Court on a motion for summary judgment and a motion to strike filed by defendants Geauga County and Cheston McNabb (Docket Nos. 54 and 58); a motion for summary judgment and an earlier motion to dismiss filed by defendants Lonnie Sparkman, Eugene Lucci, Kevin Coleman, Charles Ashman, Richard Collins, and Mark Bartolotta (Docket Nos. 64 and 69); and a motion to stay the proceedings filed by the plaintiff (Docket No. 66).

For the reasons set forth below, the Court will grant the Geauga County defendants motion for summary judgment; grant in part the Lake County defendants motion for summary judgment, dismissing the § 1983 claim for illegal seizure and remanding the state claims to the state courts; and dismiss as moot the plaintiff's motion to stay proceedings, the Lake County defendants motion to dismiss, and the  Geauga County defendants motion to strike.

## I.  BACKGROUND

The matter before the Court arose out of several criminal investigations, prosecutions, and convictions of Mr. Elersic in both Lake and Geauga Counties.  From these convictions, the Eleventh District of the Ohio Court of Appeals has been presented with issues on appeal.  The following facts were ascertained by the Eleventh District in reviewing those appeals and are undisputed by the parties in the present action:

> In the early morning hours of June 28, 1999, officers of the Geauga County Sheriff's Office investigated a report of a breaking and entering in progress at the St. Denis Golf Course in [Geauga County] ("St. Denis"). The suspects fled the scene in a [r]ed Chevrolet Blazer (the "Blazer"). In the course of the ensuing pursuit, the Mentor Police Department placed stop

> sticks at the intersection of Routes 615 and 84 in Lake County. The Blazer was disabled when it hit the stop sticks, but the two suspects escaped by running into a wooded area.
>
> A floor safe that had been stolen from St. Denis was recovered from the Blazer. Two bags were also found in the Blazer. One of the bags contained two screwdrivers and a pair of pruning shears. The other bag contained two pairs of pruning shears, a pair of tin snips, a sledgehammer, a screwdriver, a utility knife, and a pair of pliers. Gina Topazio ("Topazio") was identified as the owner of the Blazer. When the police notified Topazio that they had seized the Blazer, she indicated that she believed [Mr. Elersic] may have borrowed it the previous night.
>
> [Mr. Elersic's] car, a Mazda MX6 (the "Mazda") was in the parking lot of Topazio's apartment complex at that time. The police seized it, without a warrant . . . . [A] warrant was obtained later that morning, and a search of the vehicle was conducted. A partial list of the items recovered from [Mr. Elersic's Mazda] included: walkie-talkies (subsequently identified as the property of Great Lakes Auto Recycling), a notebook (which contained names of businesses and a rough sketch of at least one business which had been broken into), cotton gloves (subsequently determined to be the property of Concord Nursery), and a bag of coins.

Ohio v. Elersic, 2001 WL 1497192 at *1 (Ohio App. 11 Dist. Nov. 21, 2001)(hereinafter "Lake County Decision I").

Three criminal cases involving Mr. Elersic as the defendant followed the St. Denis break-in. On 17 September 1999, a Lake County Grand Jury returned a nine-count indictment against Mr. Elersic stemming from crimes committed at the Concord Nursery, Great Lakes Auto Recycling, and the Red Hawke Grille. Id. at *2. A jury found him guilty on six counts and not-guilty on three counts. Id. The Ohio Court of Appeals reversed the convictions, citing five trial errors: (1) failing to suppress evidence seized during the search of Mr. Elersic's automobile; (2) permitting the State to amend the indictment on the first morning of trial; (3) refusing to afford Mr. Elersic the opportunity to explain his concerns about his trial counsel; (4) admitting evidence of other crimes and

3

acts in violation of Ohio Evid. R. 404(B); and (5) empaneling an alternate juror after the original jury had already reached a conclusion on some of the counts, but then failing to instruct the jury to begin its deliberations anew. Id. at **2-3, 14. On remand, the trial court dismissed five of the six counts, and a new jury found Mr. Elersic not guilty of the remaining charge. (Docket No. 50 at 3).

On 22 February 2000, a Geauga County Grand Jury indicted Mr. Elersic on six counts stemming from the St. Denis break-in, the subsequent police chase, and other break-ins in Geauga County. Ohio v. Elersic, 2003 WL 23097098 at *1 (Ohio App. 11 Dist. Dec. 31, 2003)(hereinafter "Geauga County Decision"). The counts relating to the other Geauga County break-ins were subsequently dismissed. Id. The Grand Jury issued a second indictment for an additional count relating to the St. Denis incident. Id. Mr. Elersic was tried and convicted for the crimes of breaking and entering, theft, possession of criminal tools, and failure to comply with an order of a police officer. Id. He was sentenced to terms of ten months for each of the first three counts and fourteen months for the fourth count, all to be served concurrently. Id. The Ohio Court of Appeals affirmed these convictions. Id. at *9.

On 29 March 2002, Mr. Elersic was indicted again by a Lake County Grand Jury, this time on two counts relating to a burglary of a Lake County residence. (Docket No. 50 at 4-5). The trial court dismissed one count, and a jury returned a guilty verdict for burglary with a firearm specification. Id. Mr. Elersic was sentenced to a term of four years plus one additional year for the firearm specification. Id. Mr. Elersic's conviction was upheld on appeal. Id.

Mr. Elersic filed a complaint before this Court alleging claims of false arrest,

4

denial of a speedy trial, double jeopardy, and malicious prosecution against Geauga County and Cheston McNabb.  (Docket No. 1).  Mr. Elersic's complaint further asserted claims against the Lake County defendants for illegal seizure, denial of a speedy trial, double jeopardy, false imprisonment, malicious prosecution, civil conspiracy, and intentional infliction of emotional distress.  Id.

Of the eleven claims raised in plaintiff's complaint, this Court dismissed six of those claims in two orders granting a judgment on the pleadings.[1]  (Docket Nos. 31 and 50).  The claims still before the Court, which defendants now seek to dismiss as a matter of law, include -

- Section 1983 false arrest claim against Geauga County and Cheston McNabb;

- Section 1983 illegal seizure claim against Lake defendant County Lonnie Sparkman;

- State law civil conspiracy claim against Lonnie Sparkman, Eugene Lucci, Kevin Coleman, Charles Ashman, Richard Collins and Mark Bartolotta; and

- State law intentional infliction of emotional distress claim against Lonnie Sparkman, Eugene Lucci, Kevin Coleman, Charles Ashman, Richard Collins and Mark Bartolotta.

(Docket No. 50 at 18).

## II.  REPORT AND RECOMMENDATION

The Court referred this case to United States Magistrate Judge William H. Baughman on 20 January 2006 for a Report and Recommendation ("R&R").  Magistrate Judge Baughman filed his R&R on 13 June 2006, recommending the Court dismiss all

---

[1] Mr. Elersic's complaint also asserted a defamation claim against the Lake County News Herald, but this Court dismissed that claim without prejudice for failure to perfect service.  (Docket No. 52).

claims except for the § 1983 claim as against Cheston McNabb. (Docket No. 74).  The Geauga County defendants filed objections to the R&R on the grounds that it misconstrues the summary judgment standard pronounced in Fed. R. Civ. P. 56(c) and explained by case law.  (Docket No. 76).  Specifically, the Geauga County defendants argue that the R&R mistakenly places the burden of proof on the movants for summary judgment and not the party alleging injury.  Id.  Mr. Elersic filed general objections to the R&R, restating his arguments in favor of his § 1983 claims against Geauga County, Cheston McNabb and Lonnie Sparkman, and his state law claims against the Lake County defendants. (Docket No. 80).

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636 (b)(1)(C), this Court reviews de novo those portions of the Magistrate Judge's R&R to which specific objections are made.  Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  In the Sixth Circuit, objections to a magistrate judge's R&R "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  Further, "a general objection to the entirety of the magistrate's report has the same effects as would a failure to object." Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991).

Mr. Elersic's objections to the R&R do not direct this Court to factual information that would necessarily lead the Court to a conclusion different than that of the Magistrate Judge.  The Court observes that the plaintiff offers two general objections to the R&R which are conclusory allegations reiterated from his complaint.  First, Mr. Elersic alleges that Geauga County officers lied on three separate occasions

6

constituting a "pattern and practiced custom" (Docket No. 80 at 3).  Second, Mr. Elersic alleges that the Lake County defendants conspired to conceal exculpatory evidence in order to secure a conviction against Mr. Elersic for a crime he maintains he did not commit.  Id. at 5-6.  Mr. Elersic does not directly address the conclusions laid out in the R&R or offer facts beyond his allegations which would contradict the R&R's recommendations.  For this reason, the Court will adopt the R&R's recommendation to dismiss the § 1983 claims as against Lonnie Sparkman and Geauga County.  However, rather than following the R&R's recommendation to dismiss the state law claims, the Court will instead remand those claims to the state courts for review.

With respect to the § 1983 claim raised against Cheston McNabb, the Court, agrees with the Geauga County defendants that the standard of review used in the R&R was improper.  The R&R advises, "it is well-settled that the moving party for summary judgment bears the burden of establishing the absence of any genuine issue of material fact." (Docket No. 74 at 15).  Using this standard, the R&R concludes that Detective McNabb did not present sufficient evidence to demonstrate that he should be shielded from liability under the doctrine of qualified immunity.  Contrary to the R&R, the Sixth Circuit instructs that when a defendant asserts protection under qualified immunity, it is the plaintiff who bears the burden of showing that the officer is not entitled to qualified immunity.  Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006).  Thus, in the present matter, Mr. Elersic bears the burden of showing that Detective McNabb is not entitled to qualified immunity.  Under this standard of review, the Court finds that the plaintiff did not satisfy his burden and therefore will reject the R&R's recommendation to permit the claim against Cheston McNabb to proceed.

### III.  SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate if the evidence in the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indust. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex v. Catrett, 477 U.S. 317, 323 (1986); Betkerur v. Aultman Hosp. Ass'n., 78 F.3d 1079, 1087 (6th Cir. 1996).  The non-moving party must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations and citations omitted).

As summary judgment is a mechanism to dispose of "factually unsupported claims or defenses," Celotex, 477 U.S. at 323-24, the rule is proper only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1480 (6th Cir. 1989).

### IV.  LAW AND ANALYSIS

The Court first addresses the claims asserted by Mr. Elersic against Cheston McNabb and Geauga County stemming from the investigation and conviction of crimes relating to the St. Denis break-in.  See Geauga County Decision.  The Court next

addresses  Mr. Elersic's claims against the Lake County defendants.  See Lake County Decision I.

**A.  Section 1983 claim against Cheston McNabb for false arrest**

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law."  Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005.)  Mr. Elersic claims Detective Cheston McNabb violated his rights under the Fourth and Fourteenth Amendments by using false information to obtain an arrest warrant.  (Docket No. 1).  Detective McNabb urges this Court to dispose of this claim through summary judgment on the grounds that his conduct did not violate a clearly established right and is therefore shielded by the doctrine of qualified immunity.  (Docket No. 54).

    **1.  Qualified immunity standard**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Whether qualified immunity applies to an official's actions is a question of law.  Barrett v. Steubenville City Sch, 388 F.3d 967, 970 (6th Cir. 2004).

The Supreme Court requires a two-step analysis when a court is ruling on a defendant's motion for summary judgment based on a claim of qualified immunity to a § 1983 charge: "(1) whether considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was

9

clearly established." Estate of Carter v. City of Detroit, 408 F.3d 305, 310-11 (6th Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).[2]

Throughout this two-step analysis, the burden rests with the plaintiff to show that the officer is not entitled to qualified immunity. Silberstein, 440 F.3d at 311; Gardenhire v. Schubert, 205 F.3d 303, 311 (6th Cir. 2000). The plaintiff cannot satisfy his burden by relying solely on the allegations made in his pleading, but rather he "must set forth by affidavits or otherwise specific facts showing that there is a genuine issue for trial." Skousen v. Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002).

### 2. Qualified immunity analysis

Viewing the allegations and evidence in a light most favorable to Mr. Elersic, the Court finds Detective McNabb did not violate Mr. Elersic's Fourth Amendment rights.[3] The Fourth Amendment guarantees that any arrest, whether de facto or pursuant to a warrant, shall be based on probable cause. Gardenhire, 205 F.3d at 315. The Supreme Court interprets the Fourth Amendment's warrant clause as requiring a truthful factual showing that sufficiently constitutes probable cause. Franks v. Delaware, 438

---

[2] The Sixth Circuit explains: "Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here. As two recent opinions indicate, both the two-step approach and the three-step approach can be said to capture the holding of Saucier v. Katz." Estate of Carter, 408 F.3d at 311 n. 2 (citation omitted). The opinion further explains that although the Supreme Court has not expanded the two-step analysis prescribed by Saucier into three-steps, the Sixth Circuit employs the three-step analysis in certain cases in order to "increase the clarity of the proper analysis." Id.

[3] The Geauga County defendants filed a motion to strike plaintiff's exhibits attached to his memorandum in opposition, asserting the exhibits violate Rule 56(e). (Docket No. 58). Because the Court finds there is no genuine issue of material fact and Geauga County and Cheston McNabb are entitled to judgment as a matter of law, the Court deems the motion to strike moot.

U.S. 154, 164 (1978).  Therefore, "[a]n officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." Yancey v. Carroll County, KY., 876 F.2d 1238, 1243 (6th Cir. 1989).

Mr. Elersic failed to satisfy his burden when he offered no facts to support his allegation that Detective McNabb knowingly used false statements to obtain a warrant for Mr. Elersic's arrest.  The plaintiff's complaint asserts his constitutional rights were violated when Detective McNabb "knowingly use[d] . . . false information to create probable cause" in obtaining the arrest warrant.  (Docket No. 1).  To survive Detective McNabb's claim for protection under qualified immunity, Mr. Elersic must reach beyond the allegations in his complaint and proffer some facts or evidence that his constitutional rights were violated.  Mr. Elersic offers no information to demonstrate that Detective McNabb used false statements in obtaining an arrest warrant.  In addition to his failure to even articulate what false statements he believes were used to obtain the arrest warrant, Mr. Elersic failed to even produce a copy of the affidavit used to obtain the arrest warrant or the arrest warrant itself.  Because the Court has no basis for knowing what statements were used in obtaining the arrest warrant, much less whether or not such statements were truthful, the Court cannot find there was a constitutional violation.

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. Saucier, 533 U.S. at 201.  Because Mr. Elersic did not satisfy his burden, this Court finds that no genuine issue of material fact exists with respect to the plaintiff's § 1983 claim against Detective McNabb.  Accordingly, as a matter of law, Detective McNabb's

11

conduct did not violate Mr. Elersic's clearly established constitutional rights.  See Yancey, 876 F.2d at 1245 (holding that the district court was correct in finding that police officers had not violated clearly established constitutional rights in a § 1983 case where the plaintiffs presented no evidence that the officers were involved in providing false information in the affidavits used to secure search warrants).

**B.  Section 1983 claim against Geauga County for false arrest**

Plaintiff's complaint also advances a § 1983 claim of false arrest against Geauga County.  The Geauga County defendants motion the Court to dismiss this claim pursuant to Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978).

To establish that Geauga County is liable pursuant to § 1983, Mr. Elersic must allege an action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690.  In the alternative, Mr. Elersic may point to "governmental custom even though such a custom has not received formal approval through the body's official decision making channels."  Id. at 691; Thomas, 398 F.3d at 429 (explaining the plaintiff can satisfy his burden by proving the existence of "a custom of tolerance or acquiescence of federal rights violations").  A local government entity can only be held liable where it can be said that the entity itself causes the harm.  Shamaeizadeh v. Cunigan, 338 F.3d 535, 556 (6th Cir. 2003).  Thus, "[r]espondent superior or vicarious liability will not attach under § 1983."  City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Mr. Elersic fails to demonstrate the existence of any Geauga County policy, practice, or custom with respect to the allegations pertaining to Detective McNabb's

conduct.  The plaintiff alleges that the County failed to train its officers in preparing accurate and truthful reports, and that Detective McNabb lied on multiple occasions with respect to whether Mr. Elersic had been identified as one of the men seen fleeing the Blazer.  (Docket Nos. 1, 57, and 80).  Such allegations fall short of satisfying the plaintiff's burden, however, because they fail to connect any specific custom, policy, or practice to Detective McNabb's training in obtaining arrest warrants.  See Shamaeizadeh, 338 F.3d at 556 (holding that the City of Richmond was protected under qualified immunity because the plaintiff "failed to identify any specific custom, policy, or practice . . . with respect to the officers' training ," or "allege any facts linking the conduct of individual officers to a policy of the City of Richmond or its police department").  Furthermore, Mr. Elersic fails to present any facts indicating the County customarily tolerates or acquiesces federal rights violations.  Accordingly, Geauga County is entitled to judgment as a matter of law with respect to Mr. Elersic's allegation of false arrest pursuant to § 1983.

**C.  Section 1983 claims against Lonnie Sparkman for illegal seizure**

On 28 June 1999, Lake County deputies seized Mr. Elersic's Mazda without a warrant from the parking lot of an apartment complex.  Mr. Elersic claims Captain Lonnie Sparkman[4] violated his rights under the Fourth Amendment by ordering the seizure without a warrant or probable cause.  (Docket No. 1).  Defendant Sparkman moves this Court to dispose of this claim through summary judgment on the grounds

---

[4] Lonnie Sparkman was a lieutenant with the Lake County Sheriff's Office at the time of the events in question.  He has since been promoted to captain, and the Court will refer to him by his current rank.  (Docket No. 69).

that his conduct is protected by the doctrine of qualified immunity.  (Docket No. 54).

For purposes of the first step of the qualified immunity analysis set forth in Saucier, the Court will assume arguendo that the seizure of Mr. Elersic's vehicle violated his Fourth Amendment right against unreasonable searches and seizures.[5]

In the second step of the analysis, the Court determines whether Captain Sparkman is personally liable for the violation by addressing whether his actions were objectively reasonable in the circumstances that confronted him that morning.  Saucier, 533 U.S. at 201.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  If a law enforcement official reasonably but mistakenly determines that he acted in a manner consistent with the plaintiff's constitutional rights, then he is entitled to qualified immunity.  Hunter v. Bryant, 502 U.S. 224, 228 (1991).

In a sworn affidavit to the Court, Captain Sparkman asserts that prior to the St. Denis break-in on 28 June 1999, the Lake County Sheriff Department had been investigating a string of breaking and entering crimes that all had similar methods of entry.  (Docket No. 69 Def.'s Ex. F, ¶ 7).  Captain Sparkman was aware Geauga County

---

[5] Mr. Elersic's illegal seizure claim relates to his first Lake County conviction, which was reversed on direct appeal based on five errors committed by the state trial court.  Lake County Decision I, 2001 WL 1497192.  One of the errors identified by the state appellate court was the admission of evidence unlawfully obtained from Mr. Elersic's Mazda in violation of the Fourth Amendment.  Id. at *3. The state appellate court found that at the time Mr. Elersic's Mazda was first seized (the officers had the vehicle towed and secured until they were able to secure a search warrant), the vehicle itself had not yet been tied to any criminal activity.  Id. at *4.  This Court is not bound to the holding of the state appellate court, but will assume for the purposes of the qualified immunity analysis that the seizure did constitute a Fourth Amendment violation.

14

detectives were also investigating similar crimes with similar modus operandi.  Id.  He was alerted to the St. Denis break-in and believed the method of entry and theft to be similar to those being investigated in his jurisdiction.  Id. at ¶ 8 .  Lake County officers informed Captain Sparkman that Ms Topazio owned the vehicle driven by the St. Denis break-in suspects, and that she believed Mr. Elersic was in possession of her car that morning.  Id. at ¶ 9.  Based on this information, Detective Sparkman and other Lake County detectives believed Mr. Elersic was involved with the similar crimes under investigation and that Mr. Elersic's vehicle could contain evidence of those crimes (Id. at ¶ 10).  For this reason, asserts Detective Sparkman, Lake County deputies made the decision to seize and secure the vehicle until a neutral magistrate could determine if probable cause existed for a valid search.  (Docket No. 69 Def.'s Ex. E at 5-6).

     Notwithstanding the assumption that Mr. Elersic's constitutional rights were violated, Mr. Elersic fails to satisfy his burden in demonstrating the existence of a material issue of genuine fact as to whether it would have been clear to a reasonable officer on the morning of 28 June 1999 that seizing the Mazda was unlawful given the situation and circumstances confronted by the officers.  As Saucier makes clear, an officer will only be held personally liable for decisions "that a reasonable official would understand that what he is doing violates [a constitutional] right."  533 U.S. at 202.  As a threshold matter, Mr. Elersic fails to support in anyway his allegation that Captain Sparkman was the officer responsible for having the Mazda seized.  Captain Sparkman states that he did not tow the vehicle and that he was not at the scene when the vehicle was towed.  (Docket No. 69 Def.'s Ex. F, ¶ 6).  Although Mr. Elersic bears the burden of demonstrating the existence of a genuine issue of material fact, he offers no facts to

refute this assertion, such as a copy of the tow record, deposition testimony, or party admission.

Even assuming Captain Sparkman was responsible for seizing Mr. Elersic's Mazda, Mr. Elersic offers no facts, and the Court finds no facts in the record, to suggest that he or any reasonable officer in those circumstances would believe the seizure of the Mazda constituted a violation of Mr. Elersic's federal rights.  To the contrary, the facts presented to the Court show that the decision to tow the vehicle was reasonable, as the officers intended to prevent the possible disappearance or destruction of evidence of a crime.  (Docket No. 69, Def.'s Ex. F at ¶ 10, Def.'s Ex. E. at 5-6).  See Graham v. Connor, 490 U.S. 386, 396-97 (1989) (observing "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments . . . in circumstances that are tense, uncertain, and rapidly evolving").

In the absence of any general issue of material fact, the Court finds that the doctrine of qualified immunity shields Captain Lonnie Sparkman from any personal liability for Mr. Elersic's § 1983 claim.

**D. State law claims against the Lake County defendants for civil conspiracy and intentional infliction of emotional distress**

In addition to his illegal seizure claim under § 1983, Mr. Elersic asserts state law claims of civil conspiracy and intentional infliction of emotional distress against Lake County defendants Lonnie Sparkman, Eugene Lucci, Kevin Coleman, Charles Ashman, Richard Collins, and Mark Bartolotta.  (Docket No. 1).  This Court initially retained

16

supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a), as they formed part of the same controversy as Mr. Elersic's claims arising under federal law. However, because the Court is dismissing all such federal questions, the Court lacks jurisdiction to consider the remaining state claims.  For this reason, the Court will remand these claims to state court for further proceedings.

## V.  CONCLUSION

Accordingly, the Court concludes that there is no genuine issue as to any material fact with respect to the claims raised pursuant to § 1983 against Geauga County, Cheston McNabb, and Lonnie Sparkman.  For the reasons set forth in this opinion and order –

- Geauga County defendants' motion for summary judgment is granted (Docket No. 54);

- Lake County defendants' motion for summary judgment is granted in part with respect to the § 1983 illegal seizure claim (Docket No. 69);

- Lake County defendants' motion to dismiss and alternative motion to re-file motion to take plaintiff's deposition is dismissed as moot (Docket No. 64);

- Geauga County Defendants' motion to strike is dismissed as moot (Docket No. 58); and

- Plaintiff's motion to stay the proceedings is dismissed as moot (Docket No. 66).

Furthermore, as this Court lacks jurisdiction to hear the remaining two claims alleging civil conspiracy and intentional infliction of emotional distress pursuant to state law, this action shall be remanded to state court for further proceedings.

IT IS SO ORDERED.

                                                 /s/Lesley Wells
                                                 United States District Judge

Dated: 13 October 2006